UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

IVONNE MONFORT-RODRIGUEZ,
et al.,

    Plaintiffs,

    v.

CESAR A. REY-HERNANDEZ, et al.,

    Defendants.

Civil No. 01-1276 (JAF)

**OPINION AND ORDER**

This matter is before the court on defendants César Rey Hernández' and Rafael Aragunde's (hereinafter "defendants") Objections (Docket No. 175, November 19, 2008) to the Report and Recommendation (Docket No. 174, October 30, 2008) of the Magistrate Judge on defendants' motion for summary judgment and memorandum of law in support thereof (Docket No. 137, June 30, 2008, hereinafter "defendants' motion"). Plaintiffs, Ivonne Monfort-Rodríguez, Juanita Flores-de-Siaca, Carmen Rivera-Rivera, and María Coss-Martínez (hereinafter "plaintiffs" or plaintiffs Monfort, Flores, Rivera and Coss) filed a response in opposition to defendants' objections (Docket No. 178, December 5, 2008). Having considered the arguments of defendants and plaintiffs, the report and recommendation is hereby **ADOPTED and SUPPLEMENTED** as follows: Defendants' motion for summary judgment on plaintiffs' claims of political harassment, an issue not

addressed by the Magistrate Judge's Report and Recommendation, is hereby **GRANTED**.

### I.

### Plaintiffs' Political Harassment Claim

Defendants move for summary judgment on plaintiffs' claim of political harassment and persecution brought under 42 U.S.C. § 1983. Having carefully reviewed the record, this court finds that the evidence does not show an issue of material fact relevant to plaintiffs' claim of political harassment sufficient to overcome summary disposition. Accordingly, defendants' motion for summary judgment on plaintiffs' claim of political harassment is granted.

To prevail in a claim of political harassment, "the record must contain evidence which would allow a factfinder to conclude, by clear and convincing evidence, that the nonmoving employee's new position is *unreasonably inferior to the norm*," *Colon-Santiago v. Rosario,* 503 F.Supp.2d 449, 454 (D.P.R. 2007); *Rodriguez-Pinto v. Tirado-Delgado*, 982 F.2d 34, 39 (1st Cir.1993). Plaintiffs must show by a preponderance of the evidence that their political affiliation was a "substantial factor in causing the environment to become inferior." *Id.* (citing *Bisbal-Ramos v. City of Mayaguez*, 467 F.3d 16, 22 (1st Cir.2006)). Plaintiffs must demonstrate that "the change or alleged 'inferiority' was of a magnitude that would reasonably cause them to

Civil No. 01-1276 (JAG)                                                    -3-

compromise their political beliefs and associations in favor of defendants' political party." *Id*. (quoting *Bisbal*).

To succeed on a claim for political harassment in violation of the First Amendment brought under section 1983, plaintiffs must establish a causal connection between defendant Rey's conduct and the working conditions, assignments or other alleged "inferiority" of which plaintiffs complain. The essential elements of a section 1983 claim are that (I) "the defendants acted under color of state law" and (ii) "the *defendants' conduct* worked a denial of rights secured by the Constitution or by federal law." *Rodriguez-Cirillo v. Garcia*, 115 F.3d 50, 52 (1st Cir.1997) (citing *Martinez v. Colón*, 54 F.3d 980, 984 (1st Cir.1995)) (emphasis supplied). To satisfy the second element, "plaintiffs must show that the *defendants' conduct* was the *cause in fact* of the alleged deprivation." *Rodriguez,* 115 F.3d at 52 (citing *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir.1989)) (emphasis supplied). As such, supervisory liability under 42 U.S.C. 1983, "cannot be predicated on a *respondeat superior* theory . . . but only on the basis of [the supervisor's] own acts or omissions." *Seekamp v. Michaud*, 109 F.3d 802, 808 (1st Cir.1997) (citing *Sanchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir.1996)).

> [A] supervisor: can be held liable . . . if (1) the behavior of [his] subordinates results in a constitutional violation, and (2) the [supervisor]'s action or inaction was 'affirmative[ly] link[ed]' to that behavior in that it could be characterized as 'supervisory

Civil No. 01-1276 (JAG)                                                    -4-

> <u>encouragement, condation or acquiescence</u>' or '<u>gross negligence amounting to deliberate indifference</u>.' Moreover, the indifference required to support supervisory liability under section 1983 must be "deliberate, reckless or callous.' Thus, the 'affirmative link' required between the action or inaction of a supervisor and the behavior of subordinates 'contemplates proof that the supervisor's conduct led inexorably to the constitutional violation.'

*Id*. (citations omitted). In determining supervisory liability under section 1983 for a constitutional violation, an important factor to consider is whether the official was put on some kind of notice of the alleged violations. *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 902 (1st Cir.1988).

> [O]ne cannot make a 'deliberate' or 'conscious' choice to act or not to act unless confronted with a problem that requires the taking of affirmative steps. Once an official is so notified, either actually or constructively, it is reasonable to infer that the *failure* to take such steps, as well as the actual *taking* of them constitutes a choice 'from among various alternatives.'

*Id*. (citations omitted). Notably, a "constitutional violation by a subordinate is a predicate to a supervisor's liability." *Mendez v. Toledo*, 968 F.Supp. 27, 36 (D.P.R. 1997) ("[I]f the subordinate did not violate plaintiff's constitutional rights, the supervisor cannot be held liable.").

In support of and opposition to the Defendants' motion for summary judgment on plaintiffs' claim of political harassment, the parties primarily rely on excerpts from the deposition testimony of

plaintiffs. The relevant and undisputed facts, supported by the plaintiffs' testimony, are set forth below.

### A.   **Plaintiff Monfort**

On July 1, 1998, plaintiff Monfort was appointed to the position of Director of the Center of Investigations and Ethnographic Innovations. *Defts' Uncontested ¶7.* Monfort was reinstated to the position of Auxiliary Superintendent IV. *Defts' Uncontested ¶20.* In her deposition, Monfort provided testimony on her working environment following reinstatement. Specifically, Monfort states that she had to bring a chair from her home because her assigned office did not have a chair, her desk was "old and broken down," and the acoustical tiles in the office were "full of fungus." *Defts' Exhibit 10, at 55; Defts' Uncontested ¶21; Plaintiffs' Opposing ¶21.* Monfort states that the entire building was in the same condition [fungus in the acoustical tiles], but also indicates that it was in her office "that the leaks would drip down." *Defts' Exhibit 10, at 60.* After approximately four months in her first office, and after Monfort submitted an authorization for a change in offices and reasonable accommodation under the ADA Act, Monfort states that she was transferred to another office, which had the same fungus. *Plaintiffs' Exhibit I, at 57.* After four to six months in the second office, Monfort was transferred to a new district and a new office in a different building where there was a chair, no fungus, and an otherwise "acceptable" environment. *Defts' Exhibit 10, at 55-60, 63;*

*Plaintiffs' Opposing ¶ 21*. Monfort contends that as Auxiliary Superintendent IV, she was not formally assigned any specific tasks. But, Monfort also admits that she performed the functions of her position because she had worked in the position previously and understood what she was supposed to do. *Defts' Exhibit 10, at 75.* Monfort claims that she was not assigned the task of working with and making decisions on the Title I budget. *Defts' Exhibit 10, at 70; Plaintiffs' Exhibit I, at 71, 120.* Monfort states that she worked with the Title I budget as Title I Superintendent when she previously held the position of Auxiliary Superintendent IV. *Id*. It cannot be determined from Monfort's deposition testimony whether the duties of Title I Superintendent are normally assumed by the person holding the position of Auxiliary Superintendent IV. Monfort describes work on the Title I budget as a "sensitive thing." *Plaintiffs' Exhibit I, at 120.* Plaintiff Monfort states that she has been a member of the New Progressive Party (N.P.P.) all her life, participated in political activities, and that many people knew her political affiliation. *Plaintiffs' Opposing ¶ 21.*

    Having reviewed the record, the court finds that the undisputed facts do not support a finding that plaintiff Monfort suffered from working conditions in her position that were "unreasonably inferior to the norm," that her political affiliation was a "substantial factor" in causing those conditions, or that any conduct by defendant Rey can be linked to those conditions. No one prevented Monfort from

performing all the tasks inherent to her position as Auxiliary Supervisor, with *possibly* one exception. Monfort did not work with the Title I budget. But, it is questionable as to whether the duties of Title I Supervisor are customarily assumed by the Auxiliary Supervisor. Although her first and second offices contained fungus in the acoustical tiles, Monfort admits that the building suffered from the same general condition. Importantly, the facts fail to affirmatively link any act or inaction of defendant Rey to Monfort's working environment. In addition, the facts do not support a finding that defendant Rey knew of the conditions at issue. Therefore, even if Monfort's working conditions did rise to the level of "political harassment," defendant Rey cannot be made accountable. *See Mendez and Seekamp*, *supra*. Accordingly, summary judgment is granted in favor of defendants on plaintiff Monfort's claim of political harassment.

**B.  Plaintiff Flores**

On March 1, 1996, Flores was appointed to the trust position of Executive Director II, Facilitator for the Institute of Educative Reform at San Juan Educative Region. *Defts' Uncontested ¶37.* On January 16, 2001, Flores was reinstated to the career position of Elementary School Director III. *Defts' Uncontested ¶50.* But, Flores states that she performs the functions that corresponded to the position of Elementary School Director III. *Defts' Exhibit 14, at 44*. Flores admits that upon reinstatement, none of these functions were taken away from her with the exception of functions in the fiscal

Civil No. 01-1276 (JAG)                                                        -8-

area. *Id*. Flores recognizes that fiscal functions were being taken away from all schools as part of the centralizing process pursuant to Department policy. *Id.* Flores states that she has always been politically active in the N.P.P. *Defts' Exhibit 14, at 48.* Flores does not know defendant Rey personally but met him on one occasion. *Defts' Exhibit 14, at 48-49.* Flores admits that she never told defendant Rey that she is N.P.P., but believes that someone must have informed him given her political activities. *Id*.

Flores' political harassment claim is based in part on allegations concerning defendant Rey and the regional director, Milagros del Carmen Hernández Rosario ("Hernández"). *Defts' Exhibit 14, 100-101.* Flores believes that defendant Rey discriminated against her when he removed her from her position but admits that defendant Rey has not persecuted her. *Defts' Exhibit 14, at 50, 100-104; Defts' Uncontested ¶58.* Flores states that while in the position of Elementary School Director, she received "threatening letters" from Director Hernández that were copied to Lissette Pillich, Director of Human Resources, to place in Flores' personnel file. *Defts' Exhibit 14, at 79-81, 103-04.* The letters addressed "such as for example, that she [Hernández] could not find the organization to the – school," which Flores states was previously submitted. *Defts' Exhibit 14, at 79, 81.* Flores issued two response letters addressed directly to defendant Rey with copy to Hernández. *Defts' Exhibit 14, at 80,*

Civil No. 01-1276 (JAG)                                                    -9-

*103-04.* Flores did not receive a response to either letter. *Defts' Exhibit 14, at 103.* Hernández is not a party to this action.

Flores claims that as soon as the Popular Democratic Party ("P.D.P.") administration commenced in 2001, while she was in the position of Facilitator, the persons in charge of the region, Millie Aponte ("Aponte"), Heriberto Crespo ("Crespo"), and Noemí Ortiz ("Ortiz"), did not let her go out and were always asking her what she was doing. *Defts' Exhibit 14, at 99-100; Plaintiffs' Exhibit II, at 94; Plaintiffs' Opposing ¶53.* But, Flores admits that these three persons "did not let *anyone* go out." *Defts' Exhibit 14, at 99-100.* Flores believes that the above-named persons received directives "for political discrimination" from defendant Rey because "he held meetings with those persons" and defendant Rey did not know her. *Defts' Exhibit 14, at 134-135.* Flores states that she knows Aponte, Crespo, and Ortiz are P.D.P. because she has seen them in motorcades. *Defts' Exhibit 14, at 132.* Aponte, Crespo, and Ortiz are not parties to this action.

The evidence in the record is insufficient to demonstrate that Flores' working environments, while in the positions of Facilitator and Elementary School Director III, were "*unreasonably inferior to the norm*" or that political affiliation was a "substantial factor" in causing those conditions. Defendant Rey's lack of response to Hernandez' and Flores' letters might provide the requisite

"affirmative link" between defendant Rey and the actions of his subordinate, Hernández. But, the detailed contents of those letters is unknown and, therefore, whether the contents rise to the level of "political harassment" for which Rey may be held accountable. Accordingly, summary judgment is granted in favor of defendants on plaintiff Flores' claim of political harassment.

**C.    Plaintiff Rivera-Rivera**

In October 1999, plaintiff Rivera was appointed to the trust position of Director III of the Puerto Rico Statewide Systematic Initiative for Science and Mathematics ("Puerto Rico SSI"). *Defts' Uncontested ¶63.* On January 16, 2001, Rivera was reinstated to the career position of Elementary School Teacher. *Defts' Uncontested ¶72*. Following reinstatement, Rivera admits that she was able to perform all of her duties as an elementary school teacher. *Defts' Uncontested, ¶73; Defts' Exhibit, at 83*. Other than a degree of reservation on the part of the faculty, her working conditions were normal. *Id*. Rivera states that she is not politically active, but that she is N.P.P. *Defts' Exhibit 16, at 32-33*. Rivera admits that she does not know defendant Rey, but believes that he knows her because she sent him a letter concerning her early retirement. *Id*. The grounds for Rivera's allegation of harassment, persecution or conspiracy in relation to defendant Rey are limited to the fact that

he removed her from her position as Director III. *Defts' Exhibit 16, at 82-83*.

The above undisputed facts are insufficient to support a claim of political harassment against defendant Rey. There is no evidence to show that any aspect of Rivera's working environment following her reinstatement was "substantially inferior to the norm." Accordingly, summary judgment is granted on plaintiff Rivera's claim of political harassment.

**D.   Plaintiff Coss**

On January 11, 2000, plaintiff Coss was appointed to the trust position of Director of the Physical Education Program (Position Executive III). *Defts' Uncontested ¶82*. In January 2001, Coss was reinstated to the position of Teacher of Physical Education. *Defts' Uncontested ¶93-94*. Coss states that she was appointed to work at a school with children at an elementary level when before she was working at the intermediate and high-school level. *Plaintiffs' Exhibit, at 77; Defts' Exhibit, at 79*. Upon reinstatement to her position, Coss did not have a classroom. *Defts' Exhibit 18, at 82, 87*. But, neither did the other physical education teacher. *Id*. Both physical education teachers were allowed to use the library facilities as a classroom on a temporary basis. *Id*. Aside from the lack of a classroom, Coss admits that she was able to work as a physical education teacher without any further problems with the

administration and was permitted to perform all her functions. *Defts' Exhibit 18, at 88, 91*. Coss does not know defendant Rey; she has never spoken with him. *Defts' Exhibit 18, at 32*. Coss believes that her coworkers in the Department of Education and the personnel know of her political affiliation with the N.P.P. *Defts' Exhibit 18, at 41-42*. Coss states that she is politically active and has served as a polling station official and walk-a-thon participant. *Id*.

The undisputed facts are insufficient to support plaintiff Coss' claim of political harassment against defendant Rey. There is no evidence to show that any aspect of Coss' working environment following reinstatement was "substantially inferior to the norm." Accordingly, summary judgment is granted in favor of defendants on plaintiff Coss' claim of political harassment.

## II.

### Plaintiffs Request for Reinstatement

This court has considered argument on plaintiffs' request for reinstatement and will address the issue at trial.

## III.

### Matters to be Considered at Trial

Having considered and disposed of plaintiffs' due process and political harassment claims on summary disposition, the remaining claims and defenses to be considered at trial include:

(i)   Plaintiffs' claim of political discrimination;

Civil No. 01-1276 (JAG)                                                -13-

    (ii) whether political affiliation is an appropriate requirement for the effective performance of the positions held by plaintiffs prior to January 15, 2001;

    (iii) whether defendants are entitled to qualified immunity;

    (iv) whether defendants were justified in removing plaintiffs from their positions and reinstalling them in career positions as part of a legitimate reorganization of the Department of Education.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 17th day of February, 2009.

                                  s/José Antonio Fusté
                                  JOSE ANTONIO FUSTE
                                  Chief U.S. District Judge